**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **24FUNDRAISER.COM LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** |
| **v.** | ) | |
| | ) | |
| **ANIL DAS and FALGU INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**VERIFIED COMPLAINT AT LAW**

24Fundraiser.com LLC, for its complaint against Anil Das and Falgu Inc., states:

**J<small>URISDICTION</small> <u>A<small>ND</small></u> V<small>ENUE</small>**

1. Under 28 U.S.C. §1331, subject matter jurisdiction is proper because this Court has original jurisdiction of all civil actions arising under the laws of the United States.

2. Under 28 U.S.C. §1332(a)(2), subject matter jurisdiction is proper because 24Fundraiser.com LLC (24Fundraiser") seeks damages in excess of $75,000.00 from the defendants, and the parties are completely diverse.

3. Venue is proper in the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §1391(b)(2), because a substantial portion of the events underlying this action took place within the Northern District of Illinois, and the various agreements that Hummel tortiously interfered with specified Illinois as the proper venue.

**T<small>HE</small> P<small>ARTIES</small>**

4. 24Fundraiser.com is an Illinois limited liability company.

5. On information and belief, Anil Das is a resident of Virginia 20148 and the President of Falgu Inc.

6. Falgu Inc. is a Virginia corporation that provides technology solutions and services to various associations. It maintains its corporate offices at 42511 Rosalind St., Ashburn, Virginia.

## BACKGROUND

7. 24Fundraiser operates an online business offering services to charities and other nonprofit entities throughout the United States that allows those parties to unlock the power of fundraising software to amplify their reach and reduce overhead costs by allowing the public to undertake online auctions, accept donations online, and operate online raffles. 24Fundraiser does business under the assumed name of Charity Auctions Today.

8. Because 24Fundraiser operates an online business, it spends substantial sums and time developing and updating the computer code needed to improve its online presence and maintain its business. The computer code is the lifeblood of 24Fundraiser's business.

9. Because 24Fundraiser operates an online business, it maintains a high level of security to prevent unauthorized access to its online site and computer code.

10. Each person seeking to access 24Fundraiser's website and computer code must have a secure username and password.

11. In or about 2020, 24Fundraiser retained Anil Das and Falgu Inc. to assist it with computer coding development, online presence management, and other matters.

12. In exchange for the services provided, Anil Das and Falgu Inc. agreed that 24Fundraiser would own all intellectual property developed, provided, or on which Anil Das performed work.

13. Before May 7, 2024, Anil Das held the position of administrator over an account known as Jira, which was used to manage and update 24Fundraiser's computer code.

2

14. On or about May 7, 2024, 24Fundraiser requested that Anil Das give Thomas Kelly, one of 24Fundraiser's managers, and Michael Krowne, its Chief Operating Officer, administrator's access to 24Fundraiser's Jira account.

15. Although Anil Das agreed to provide Thomas Kelly and Michael Krowne with administrator's access to 24Fundraiser's Jira account, he never did so.

16. From time to time thereafter, Anil Das either blamed Jira for failing to allow Thomas Kelly and Michael Krowne to have administrator's access to 24Fundraiser's Jira account or falsely claimed each had such access.

17. On or about May 7, 2024, 24Fundraiser discovered that Anil Das and Falgu Inc. did not maintain 24Fundraiser's computer code in a centralized location and, instead, it was located on a computer or server maintained by Anil Das and/or Falgu Inc. and had been downloaded to the local machine of every developer working for Anil Das and Falgu Inc. on 24Fundraiser's code.

18. 24Fundraiser asked Anil Das to push all computer code to a centralized repository. Instead of doing what was asked of him, he instead gave Thomas Kelly misleading and unclear answers about where 24Fundraiser's code was located.

19. On information and belief, 24Fundraiser's computer code was never placed in a centralized repository.

20. Except as otherwise stated, at all pertinent times, 24Fundraiser used an online platform known as "Stripe" to accept payments online and embed financial services, which allowed 24Fundraiser to accept and manage client funds and obtain payment for its services.

21. On or about May 15, 2024, Anil Das and Falgu Inc. added an application to a test Stripe account for testing purposes using the name "BidForCause."

3

22. On or about May 28, 2024, Anil Das and Falgu Inc., Inc., directly or through their development team deployed a file into 24Fundraiser's system that caused 24Fundraiser's entire website to be deindexed by Google.

23. The deindexing from Google caused 24Fundraiser's website to no longer appear in Google Searches, the source of approximately 90% to 95% of 24Fundraiser's clients.

24. On or about June 25, 2024, Anil Das registered the domain www.bidforcause.com.

25. On or about July 1, 2024, Anil Das connected the BidForCause website to 24Fundraiser's local.dev.mobilesmartbid testing Stripe account.

26. On or about that same day, Thomas Kelly and Anil Das had a telephone conversation in which Thomas Kelly asked Anil Das where all of 24Fundraiser's code was located. Anil Das told Thomas Kelly that 100% of the code was located in BitBucket, an online repository.

27. A review of BitBucket disclosed that only a portion of 24Fundraiser's code was located in BitBucket and was unavailable to 24Fundraiser.

28. Anil Das and Falgu Inc. subsequently tampered with 24Fundraiser's computer code.

29. Because, due to Anil Das and Falgu Inc.'s actions, all of 24Fundraiser's code was not in BitBucket, 24Fundraiser had to incur substantial costs in correcting its computer code.

30. On or about July 6, 2024, Thomas Kelly questioned Anil Das concerning the amount of work Falgu Inc.'s development team was producing in relation to the number of hours billed to 24Fundraiser by the team.

31. At that time, Anil Das claimed his team's hours correlated to the amount Anil Das and Falgu Inc. billed 24 Fundraiser.

32. Because Thomas Kelly suspected the development team had not worked the number of hours billed by Anil Das and Falgu Inc., he questioned Anil Das on how he and Falgu Inc. tracked the development team's hours.

33. On or about July 7, 2024, Thomas Kelly instructed Anil Das and Falgu Inc. to tell the development team to stop working until 24Fundraiser could determine how many hours the development team had worked.

34. At that time, Anil Das told Thomas Kelly that the development team was tracking the number of hours worked per day per team member and reassured Thomas Kelly that he would pull all the hours the following day because he tracks the hours worked each day by each team member in Jira.

35. On or about July 7, 2024, Thomas Kelly captured all the hours reports for the entire year from Jira and noted that less than ten percent (10%) of the hours Anil Das and Falgu Inc., Inc. billed 24Fundraiser appeared in the reports.

36. On or about July 7, 2024, Anil Das demanded payment from Thomas Kelly regarding what Anil Das claimed to be unpaid invoices. However, Thomas Kelly determined that no monies were owed because he had checked the time reports, and he informed Anil Das that the amounts 24Fundraiser previously paid exceeded the time spent on 24Fundraiser's work.

37. Then, in the middle of the night on July 7, 2024, Anil Das instructed his team to go into Jira and update their hours and backdate them for the entire year.

38. 24Fundraiser became aware of Anil Das's deception only because Thomas Kelly had captured all the reports from Jira before Anil Das ordered his team to update their hours and backdate them.

39. On or about July 8, 2024, Thomas Kelly confronted Anil Das about the changes to the time reports. Anil Das admitted to Thomas Kelly that he instructed his team to go into Jira and add hours.

40. On July 9, 2024, 24Fundraiser began experiencing issues with its website failing to perform correctly, which issues continued to exist until 24Fundraiser retained a third party to correct its code.

41. On July 12, 2024, Anil Das entered into both of 24Fundraiser's server hosting accounts and increased 24Fundraiser's server resources, thereby causing an increase in costs of approximately five hundred percent (500%). The total cost of the increase to only one of the servers was approximately $30,000.00 between July 12 and August 3, 2024.

42. On or about July 12, 2024, Anil Das kicked 24Fundraiser's entire team out of Jira and blocked their access to it.

43. On or about July 12, 2024, when confronted with the situation by Thomas Kelly, Anil Das claimed a Jira support issue caused the removal of access and claimed that Thomas Kelly and 24Fundraiser's team should have access within 48 hours. 24Fundraiser never received access to Jira.

44. On or about July 12, 2024, Anil Das also falsely claimed to Thomas Kelly that he gave Michael Krowne administrative access months before.

45. At that time, because of concerns about Anil Das and his actions, 24Fundraiser began removing Anil Das' access from all of 24Fundraiser's tools.

46. On or about July 15, 2024, 24Fundraiser received the first reports of invoices failing to generate as reported on the RCAT platform. The RCAT platform is a code base that 24Fundraiser used to operate its business for new customers.

47. On or about July 21, 2024, Jira support informed Thomas Kelly that Anil Das was the administrator of the Jira account, and that Thomas Kelly needed to contact Anil Das to obtain access to Jira.

48. Thereafter, Anil Das threatened 24Fundraiser by email, "Ever thought, if I had to hold all the access and deny you access, there are so many ways and so many things I could have done."



49. On or about July 23, 2024, Anil Das registered BidForCause as Falgu Inc.'s assumed name.

50. That same day, while Anil Das was 24Fundraiser's sole administrator, the following

occurred:

    a. 24Fundraiser's Classic Platform, which Anil Das and Falgu Inc. did not develop but to which they had access, started to experience issues with the code when an auction ended; and

    b. Original time blocks would change randomly. Users were unable to login access and manage their auctions.

51. From and after July 23, 2024 until approximately November 1, 2024, 24Fundraiser was unable to run 100% successful auctions, which caused 24Fundraiser to lose revenues and relationships with customers.

52. On July 24, 2024, while Anil Das was 24Fundraiser's sole administrator, Google login/sign-up stopped working.

53. On July 25, 2024 at 3:55 pm, Thomas Kelly received a message from Stripe Payment Processing that his administrator role had been changed to "View Only" access. At this point, Anil Das had full control of 24Fundraiser's Stripe account.

54. On July 25, 2024, Anil Das logged into 24Fundraiser's Stripe account and changed the Payment Descriptor that all users see on their credit card statements to "Charity Auctions" so it would appear that 24Fundraiser's clients were still paying 24Fundraiser, although they were in actuality paying Falgu Inc. Anil Das also changed the bank account number in 24Fundraiser's Stripe account to a bank account he controlled to funnel the payments to himself and/or Falgu Inc.

55. Anil Das also changed the business name in 24Fundraiser's Stripe account to "Charity Auctions" with his anil.Anil.Das@FalguInc.solutions.com email to confuse 24Fundraiser's clients into thinking they were paying 24Fundraiser.

56. On July 29, 2024, hours before the API was updated in 24Fundraier's code, Anil Das and Falgu Inc. started funneling money to Falgu Inc's PNC Bank account.

57. Anil Das, with the assistance of two people in India, sandeptagartia315@gmail.com and mohammad.sarif@Falgu_Inc.solutions.com, changed the payment code in 24Fundraiser's Stripe account, which allowed Anil Das and Falgu Inc., Inc. to take 24Fundraiser's money.

58. Through the aforementioned actions, Anil Das and Falgu Inc., Inc. used 24Fundraiser's Stripe account to funnel money from 24Fundraiser's classic and RCAT platform from its clients to Falgu Inc.

59. Anil Das and Falgu Inc's actions allowed them to take at least $30,328.98 from ten (10) different client accounts along with fees 24Fundraiser earned from services for those clients. Anil Das and Falgu Inc., Inc. only stopped funneling payments to themselves because 24Fundraiser became aware of their actions and made a demand on Anil Das to cease the funneling and return the funds.

60. Anil Das and Falgu Inc. sabotaged 24Fundraiser's computer code, which destroyed 24Fundraiser's ability to operate its business for a significant period by creating substantial issues between 24Fundraiser and its clients and harming 24Fundraiser's relationships with clients.

61. Anil Das and Falgu Inc. also kept in their possession a version of the code that they had not sabotaged and have failed to return that code to 24Fundraiser, despite 24Fundraiser's demand to do so.

62. Anil Das and Falgu Inc. intended that their changes to 24Fundraiser's Stripe account would destroy 24Fundraiser's ability to access funds from its clients, thereby creating substantial issues between 24Fundraiser and its clients and harming its relationships and its reputation in its industry.

63. Although 24Fundraiser eventually obtained a return of funds from Stripe, Anil Das and Falgu Inc. have damaged 24Fundraiser's business relationships and reputation.

64. 24Fundraiser suffered damages resulting from its need to hire a third party to correct its computer code and recreate information Anil Das and Falgu Inc. maliciously deleted.

65. Anil Das, for himself and through Falgu Inc., operated an online auction business named BidForCause in competition with 24Fundraiser. BidForCause operated using the computer code created for 24Fundraiser.

66. Although 24Fundraiser has made demand on Anil Das and Falgu Inc. for the return of $150,000.00 in overpayment of the known inaccurate invoices and the return of the non-sabotaged code. Anil Das and Falgu Inc. have refused 24Fundraiser's demands.

67. Due to Anil Das and Falgu's actions, 24Fundraiser suffered at least $50,000 in increased costs.

68. Due to Anil Das and Falgu's actions, 24Fundraiser suffered in excess of $140,000 to repair its code and rewrite work tickets that it lost.

69. Due to Anil Das and Falgu's actions, 24Fundraiser was damaged by at least $35,000 in increased server hosting account costs.

70. Due to Anil Das and Falgu's actions, 24Fundraiser lost client relationships that had continued and were expected to continue, thereby causing lost profits in excess of $300,000.

71. Anil Das's breach of the parties' agreement has damaged 24Fundraiser in lost profits of at least $340,000.00.

## COUNT I – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

72. 24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 72 of this count as if fully rewritten herein.

73. The Computer Fraud and Abuse Act, 18 U.S.C. 1030, ("CFAA") prohibits: (1) the unauthorized accessing (2) of a "protected" computer (3) with the intent to either (a) obtain information, (b) further a fraud, *or* (c) damage the computer or its data.

74. Computers used in interstate commerce are included under "protected" computers, and thus nearly all computers are protected under the CFAA.

75. Anil Das and Falgu Inc. through Anil Das violated the CFFA by accessing without authorization information on 24Fundraiser's website and computer code for their own purposes, and not for 24Fundraiser's business, to further a fraud or damage 24Fundraiser's data.

76. 24Fundraiser's data has been damaged, and 24Fundraiser operations were therefore not fully functional for several months.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Anil Das and Falgu Inc. of not less than $1,000,000.00, and other just relief.

### COUNT II – FALGU INC. BREACH OF CONTRACT FOR OVERBILLING

77. 24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 77 of this count as if fully rewritten herein.

78. Falgu Inc. and 24Fundraiser were parties to an oral agreement under which Falgu Inc. agreed to develop computer code and maintain 24Fundraiser's website in exchange for the payment for hours expended by Anil Das and members of a development team he selected.

79. Falgu Inc. agreed to maintain accurate records of time expended on 24Fundraiser's behalf for the purpose of billing 24Fundraiser for the actual time expended by Anil Das and the development term members.

80. Falgu Inc's failure to provide 24Fundraiser with invoices that reflected an accurate accounting of time as agreed by the parties is a breach of the parties' agreement.

81. Falgu Inc.'s acceptance of more than $150,000.00 in overpayment from 24Fundraiser based on inaccurate invoices that did not reflect an accurate accounting of time has damaged 24Fundraiser in an amount in excess of $150,000.00.

82. Falgu Inc.'s breach of the parties' agreement has damaged 24Fundraiser in lost profits of at least $150,000.00.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Falgu Inc. of not less than $150,000.00 and for such just other relief.

### COUNT III – ANIL DAS BREACH OF CONTRACT FOR OVERBILLING

83. 24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 83 of this count as if fully rewritten herein.

84. Anil Das and 24Fundraiser were parties to an oral agreement under which Anil Das agreed to develop computer code to be owned by 24Fundraiser and maintain 24Fundraiser's website in exchange for the payment for hours expended by Anil Das and members of a development team he selected.

85. Anil Das agreed to maintain accurate records of time expended on 24Fundraiser's behalf for the purpose of billing 24Fundraiser for the actual time expended by Anil Das and the development term members.

86. Anil Das's failure to provide 24Fundraiser with invoices that reflected an accurate accounting of time as agreed to by the parties is a breach of the parties' agreement.

13

87. Anil Das's acceptance of more than $150,000.00 in overpayment from 24Fundraiser based on inaccurate invoices that did not reflect an accurate accounting of time has damaged 24Fundraiser in an amount in excess of $150,000.00.

88. Anil Das's breach of the parties' agreement has damaged 24Fundraiser in lost profits of at least $150,000.00.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Anil Das of not less than $150,000.00, and for other just relief.

### COUNT IV – FALGU INC. BREACH OF CONTRACT FOR SABOTAGE

89. 24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 89 of this count as if fully rewritten herein.

90. Falgu Inc. and 24Fundraiser were parties to an oral agreement under which Falgu Inc. agreed to develop computer code and maintain 24Fundraiser's website in exchange for the payment for hours expended by Anil Das and members of a development team he selected.

91. Falgu Inc.'s actions, as described above, amount to the sabotage of 24Fundraiser's computer code and constitute a breach of the parties' contract.

92. By retaining a version of the code not sabotaged and failing to return it to 24Fundraiser, despite demand, Falgu Inc. breached the parties' agreement.

93. Falgu Inc.'s sabotage of 24Fundraiser's computer code has damaged 24Fundraiser in excess of $700,000.00, including its inability to operate its website.

94. Falgu Inc.'s retention and failure to return the non-sabotaged version of the code to 24Fundraiser damaged 24Fundraiser in excess of $700,000.00, including its inability to operate its website.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Falgu Inc., in an amount not less than $700,000.00, and for other just relief.

### COUNT V – ANIL DAS BREACH OF CONTRACT FOR SABOTAGE

95. 24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 95 of this count as if fully rewritten herein.

96. Anil Das and 24Fundraiser were parties to an oral agreement under which Anil Das agreed to develop computer code and maintain 24Fundraiser's website in exchange for the payment for hours expended by Anil Das and members of a development team he selected.

97. Anil Das's actions, as described above, amount to the sabotage of 24Fundraiser's computer code and constitute a breach of the parties' contract.

98. By keeping a version of the code not sabotaged and failing to return it to 24Fundraiser, despite demand, Anil Das breached the parties' agreement.

99. Anil Das's sabotage of 24Fundraiser's computer code has damaged 24Fundraiser in excess of $700,000.00, including its inability to operate its website.

100. Anil Das's retention and failure to return the non-sabotaged version of the code to 24Fundraiser damaged 24Fundraiser in excess of $700,000.00, including its inability to operate its website.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Anil Das, in an amount not less than $700,000.00, and for other just relief.

### COUNT VI (TORTIOUS INTERFERENCE WITH CONTRACT)

101. 24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 101 of this count as if fully rewritten herein.

102.   Under Illinois law, a plaintiff claiming tortious interference with contract must establish five elements: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages."

103.   24Fundraiser entered into contractual relationships with various third parties to host and operate auctions on their behalf.

104.   Anil Das and Falgu Inc. were aware of 24Fundraiser's contractual relationships with various third parties since those relationships were apparent through a review of 24Fundraiser's website and Stripe accounts available to Anil Das and Falgu Inc.

105.   Anil Das and Falgu Inc.'s actions as described above amount to the sabotage of 24Fundraiser's computer code.

106.   Anil Das and Falgu Inc.'s sabotage of 24Fundraiser's computer code interfered with 24Fundraiser's relationships with the third parties with whom it contracted because the various auctions 24Fundraiser attempted to operate failed to occur.

107.   Anil Das and Falgu Inc.'s sabotage of 24Fundraiser's computer code caused 24Fundraiser to breach its contracts with the third parties with whom it contracted because the various auctions 24Fundraiser attempted to operate failed to occur.

108.   In addition, by changing the information required to access 24Fundraiser's Stripe Account, Anil Das and Falgu Inc. destroyed 24Fundraiser's ability to access funds from its clients, thereby creating substantial issues between 24Fundraiser and its clients.

109.   As a result of Anil Das and Falgu Inc.'s actions, 24Fundraiser has been damaged due to lost profits in excess of $1,000,000.00.

110.     Anil Das and Falgu Inc.'s actions in sabotaging the computer code, the refusal to return the computer code 24Fundraiser contracted to purchase, and redirecting Stripe account payments were done willfully, maliciously, and with a wanton disregard of the rights of 24Fundraiser to conduct its business with its existing clients.

111.     As a result of Anil Das and Falgu Inc.'s actions, 24Fundraiser has been damaged due to lost profits in excess of $1,000,000.00.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Anil Das and Falgu Inc. in an amount not less than $1,000,000.00, for punitive damages in an amount to be determined at trial, and for other just relief.

### COUNT VII (TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY)

112.     24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 112 of this count as if fully rewritten herein.

113.     To assert a claim for tortious interference with a business expectancy under Illinois law, a plaintiff must show (1) a "reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference."

114.     24Fundraiser had a reasonable expectation of entering into valid business relationships with certain third parties.

115.     Anil Das and Falgu Inc. knew that 24Fundraiser had a reasonable expectation of entering into valid business relationships with third parties because 24Fundraiser informed Anil Das and Falgu Inc. of its business model and how it operated to allow Anil Das and Falgu Inc. to develop computer code for 24Fundraiser.

116.    Anil Das and Falgu Inc.'s actions as described above amount to the sabotage of 24Fundraiser's computer code.

117.    By sabotaging the code that they developed for 24Fundraiser, Anil Das and Falgu Inc. purposefully interfered, prevented, and continue to prevent 24Fundraiser's legitimate expectancy from ripening into a valid business relationship.

118.    Anil Das and Falgu Inc.'s actions in sabotaging 24Fundraiser's computer code, retaining and failing to return the non-sabotaged version of the code to 24Fundraiser, and changing 24Fundraiser's access information in its Stripe Account was done willfully, maliciously, and with a wanton disregard of the rights of 24Fundraiser to prevent 24Fundraiser's legitimate expectancy from ripening into a valid business relationship.

119.    As a result of Anil Das and Falgu Inc.'s actions, 24Fundraiser has been damaged due to lost profits in excess of $1,000,000.00.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Anil Das and Falgu Inc. in an amount not less than $1,000,000.00, for punitive damages in an amount to be determined at trial, and for other just relief.

**COUNT VIII (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)**

120.    24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 120 of this count as if fully rewritten herein.

121.    Tortious interference with prospective economic advantage requires a plaintiff to establish: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and (4) damage to the plaintiff resulting from the defendant's interference.

18

122.    Anil Das and Falgu Inc.'s actions as described above amount to the sabotage of 24Fundraiser's computer code.

123.    Anil Das and Falgu Inc.'s sabotage of 24Fundraiser's code destroyed 24Fundraising's ability to operate its business for several months.

124.    24Fundraiser had a reasonable expectation of entering into valid business relationships with third parties.

125.    Anil Das and Falgu Inc. knew that 24Fundraiser had reasonable expectations of entering into valid business relationships with third parties because 24Fundraiser informed Anil Das and Falgu Inc. of its business model and how it operated to allow Anil Das and Falgu Inc. to develop computer code for 24Fundraiser.

126.    By retaining and failing to return the non-sabotaged version of the code to 24Fundraiser, and by sabotaging the code they developed for 24Fundraiser, Anil Das and Falgu Inc. purposefully interfered, prevented and continue to prevent 24Fundraiser's legitimate expectancy from ripening into valid business relationships.

127.    Anil Das and Falgu Inc.'s intentional interference with 24Fundraiser's valid expectation of prospective business arising from its previously good reputation in the business community in which it operated constitutes an intentional and unjustified interference that induced or caused a breach or termination of the expectancy.

128.    By changing the information required to access 24Fundraiser's Stripe Account thereby making it inaccessible to 24Fundraiser, Anil Das and Falgu Inc. have caused great reputational harm to 24Fundraiser, thereby intentionally interfering with 24Fundraiser's valid expectation of prospective business arising from its previously good reputation in the business community

in which it operated and constitutes an intentional and unjustified interference that induced or caused a breach or termination of the expectancy.

129.    Anil Das and Falgu Inc.'s actions in sabotaging the code they developed for 24Fundraiser, retaining and failing to return the non-sabotaged version of the code to 24Fundraiser, and changing 24Fundraiser's access information in its Stripe Account was done willfully, maliciously, and with a wanton disregard of the rights of 24Fundraiser to fulfill a valid expectation of prospective business.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Anil Das and Falgu Inc. in an amount not less than $1,000,000.00, for punitive damages in an amount to be determined at trial, and for other just relief.

### COUNT IX VIOLATION ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT; 815 ILCS 505/1 ET SEQ.

130.    24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 130 of this count as if fully rewritten herein.

131.    Anil Das and Falgu Inc. sent invoices to 24Fundraiser that did not reflect an accurate accounting of time.

132.    When Anil Das and Falgu Inc. sent invoices to 24Fundraiser that did not reflect an accurate accounting of time, they intended 24Fundraiser to rely on the inaccurate invoices and pay them.

133.    24Fundraiser relied on Anil Das and Falgu Inc. to provide 24Fundraiser with invoices reflecting an accurate accounting of time.

134.    In reliance on the inaccurate invoices sent to it by Anil Das and Falgu Inc., 24Fundraiser overpaid invoices in excess of $150,000.00.

135.    As a result, 24Fundraiser has been damaged in an amount in excess of $150,000.00.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Anil Das and Falgu Inc. in an amount not less than $150,000.00, plus costs of suit and reasonable attorneys' fees under 815 ILCS 505/10a, and for other just relief.

### COUNT X COMMON LAW FRAUD

136.  24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 136 of this count as if fully rewritten herein.

137.  A plaintiff alleging common law fraud must establish each of the following elements: "(1) a statement by defendant; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known or believed by the speaker to be untrue or made in culpable ignorance of its truth or falsity; (5) that was relied on by the plaintiff to his detriment; (6) made for the purpose of inducing reliance; and (7) such reliance led to the plaintiff's injury."

138.  Anil Das and Falgu Inc. sent invoices to 24Fundraiser that did not reflect an accurate accounting of time.

139.  When Anil Das and Falgu Inc. sent the invoices to 24Fundraiser, they made a false statement of material fact, i.e., that the invoices reflected an accurate accounting of time expended in the development of 24Fundraiser's computer code.

140.  At the time Anil Das and Falgu Inc. sent the inaccurate invoices to 24Fundraiser, they knew or should have known the invoices were false in that the invoices did not reflect an accurate accounting of time spent in the development of 24Fundraiser's computer code.

141.  When Anil Das and Falgu Inc. sent the inaccurate invoices to 24Fundraiser, they intended 24Fundraiser to rely on the inaccurate invoices and to pay them.

142.  24Fundraiser relied to its detriment on Anil Das and Falgu Inc. by paying $150,000.00 or more of invoices that did not reflect an accurate accounting of time.

143.   In reliance on the inaccurate invoices sent to it by Anil Das and Falgu Inc., 24Fundraiser overpaid Anil Das and Falgu Inc. in excess of $150,000.00.

144.   As a result, 24Fundraiser has been damaged in an amount in excess of $150,000.00.

145.   Anil Das and Falgu Inc. acted willfully and fraudulently in intentionally sending 24Fundraiser inaccurate invoices they intended that 24Fundraiser rely on and pay.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Anil Das and Falgu Inc. in an amount not less than $150,000.00, for punitive damages in an amount to be determined at trial, and for other just relief.

**COUNT XI UNJUST ENRICHMENT PLEADED IN THE ALTERNATIVE TO COUNT III**

146.   24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 146 of this count as if fully rewritten herein.

147.   To state a cause of action for unjust enrichment, a plaintiff must establish: "(1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."

148.   Falgu Inc.'s retention of more than $150,000.00 overpaid by 24Fundraiser on invoices that did not reflect an accurate accounting of time conferred a benefit of more than $150,000.00 on Falgu Inc. to 24Fundraiser's detriment.

149.   It would violate fundamental principles of justice, equity, and good conscience for Falgu Inc. to retain the benefit.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Falgu Inc. of less than $150,000.00, and for other just relief.

### COUNT XII UNJUST ENRICHMENT PLEADED IN THE ALTERNATIVE TO COUNT IV

150.    24Fundraiser incorporates and re-alleges paragraphs 1-71 as paragraph 150 of this count as if fully rewritten herein.

151.    To state a cause of action for unjust enrichment, a plaintiff must establish: "(1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."

152.    Anil Das' retention of more than $150,000.00 overpaid by 24Fundraiser on invoices that did not reflect an accurate accounting of time conferred a benefit of more than $150,000.00 on Anil Das to 24Fundraiser's detriment.

153.    It would violate fundamental principles of justice, equity, and good conscience for Anil Das to retain the benefit.

WHEREFORE, 24Fundraiser.com LLC prays for judgment in its favor and against Anil Das of not less than $150,000.00, and for other just relief.

**24FUNDRAISER.COM, LLC d/b/a
CHARITY AUCTIONS TODAY**

By:   /s/Gregory J. Jordan
One of Its Attorneys

Gregory Jordan (ARDC No. 6205519)
Mark R. Zito (ARDC No. 6276231)
Jordan & Zito LLC
350 N LaSalle Drive, Suite 1100
Chicago, Illinois 60654
(312) 854-7181
gjordan@jz-llc.com
mzito@jz-llc.com

COUNSEL FOR 24FUNDRAISER.COM LLC D/B/A CHARITY AUCTIONS TODAY